IN THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.  1:26-cv-00177

| | | |
|---|---|---|
| BLACK MOUNTAIN BREWING & DISTILLING, LLC,  and 131 BROADWAY, LLC<br>　　　Plaintiffs,<br><br>v.<br><br>TOWN OF BLACK MOUNTAIN, NC, JOSH HARROLD, in his official capacity and individually; JESSICA TROTMAN, in her official capacity and individually, CHARLES RUSSELL CATE, in his official capacity and individually; MICHELLE KENNEDY, in her official capacity and individually; RICHARD BURTON in his official capacity and individually; CHARLES RUSSELL, in his official capacity and individually; DANIEL CORDELL, in his official capacity; SPENCER ELLIOTT, in his official capacity and JENNIFER TIPTON in her official capacity<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT FOR DAMAGES**<br>**(Jury Trial Demanded)** |

NOW COMES Black Mountain Brewing & Distilling, LLC, and 131 Broadway, LLC (hereinafter collectively known as "the Plaintiffs" or "Plaintiffs") by and through the undersigned counsel and files its complaint for damages against the Defendants as follows:

1.     Plaintiff Black Mountain Brewing & Distilling, LLC, (hereinafter referred to as "BMB") is a North Carolina limited liability company organized in the State of North Carolina and doing business within North Carolina.

2. Plaintiff 131 Broadway, LLC, (hereinafter referred to as "131 Broadway") is a North Carolina limited liability company and is the owner of real property located at 131 Broadway Street in the Town of Black Mountain, which it leases to Plaintiff BMB, for the operation a brewery and tasting room.

3. Defendant, The Town of Black Mountain, NC is a municipal corporation and political subdivision organized under the laws of the State of North Carolina and may be served with process through its administrative offices located at 160 Midland Avenue, Black Mountain, NC 28711.

4. Defendant Josh Harrold served as Planning Director and/or as Town Manager during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Harrold is a citizen and resident of North Carolina.

5. Defendant Jessica Trotman served as Planning Director and/or as Assistant Town Manager during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Trotman is a citizen and resident of North Carolina.

6. Defendant Russell Cate served as Zoning Administrator during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Cate is a citizen and resident of North Carolina.

7. Defendant Michelle Kennedy served as Planning Director during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Kennedy is a citizen and resident of North Carolina.

8. Defendant Charles Richard Burton served as Building Inspector during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Burton is a citizen and resident of North Carolina.

9. Defendant Charles Russell served as Building Inspector and Fire Inspector during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Russell is a citizen and resident of North Carolina.

10. Defendant Daniel Cordell served as Building Inspector during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Cordell is a citizen and resident of North Carolina.

11. Defendant Spencer Elliott served as Fire Inspector during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Russell is a citizen and resident of North Carolina.

12. Defendant Jennifer Tipton served as Zoning Administrator during periods of time relevant to this Complaint. Plaintiffs are informed and believe that Defendant Tipton is a citizen and resident of North Carolina.

13. The individual Defendants are sued in their individual capacities for actions taken outside the scope of their legislative or administrative functions, including but not limited to enforcement actions, communications, and directives relating to Plaintiff's property.

14. The subject matter and incidents giving rise to Plaintiff's Complaint occurred in Black Mountain, NC.

15. Upon information and belief, and to the extent that Governmental immunity applies to the claims asserted herein, the Town has waived its governmental immunity from such claims pursuant to N.C. Gen. Stat. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the Town and/or its employees in their official capacities for any judgment resulting from this action.

16. At all times relevant to the events giving rise to this action, the Town issued building permits, performed building inspections, and issued certificates of occupancy for activities, plans, and/or structures within its territorial jurisdiction that required the same under the North Carolina Building Code.

17. Upon information and belief, at all times relevant to the events giving rise to this action, the Town collected fees in connection with the issuance of building permits, the performance of building inspections, and the issuance of certificates of occupancy for a profit beyond incidental income.

18. Venue is proper for the foregoing reasons.

## FACTS

19. The Plaintiff reiterates the foregoing paragraphs as if fully stated verbatim herein.

20. Plaintiff BMB owns and operates a brewery doing business as Black Mountain Brewing, located at 131 Broadway Street in Black Mountain, which has been in operation since 2018.

21. Plaintiff 131 Broadway applied for, and received, a building permit (Permit 3621) from Defendant Town of Black Mountain on August 16, 2017, for the renovation of its property, including the construction of a deck on the back of the business.

22. Plaintiffs constructed a wooden deck of approximately 768 square feet, as permitted by Defendants, at considerable expense.

23. On or about May 1, 2018, Defendant Cordell, Defendant Spencer, and Defendant Tipton, all certified to the North Carolina Alcoholic Beverage Control Commission that the business and building were in compliance with all building, fire, and zoning codes,

24. A Certificate of Occupancy was issued by Defendant Cordell on or about July 23, 2018.

25. Plaintiffs applied for and were issued a second building permit (Permit 5925) for the installation of a small shed roof over a portion of the existing wooden deck.

26. The shed roof was installed and inspected, and a certificate of compliance was issued by Defendant Cordell.

27. Plaintiffs applied for and were issued a third building permit (Permit 6177) to add the second level deck addition to the existing rear deck structure in 2020.

28. Engineered drawings were submitted to and approved by Defendant Cordell.

29. The building is located within the Primary Fire District for the Town of Black Mountain.

30. Generally, additions to existing structures in the primary fire district are required, pursuant to Appendix D of the North Carolina State Building Code, to be of a type of construction permitted for new buildings within the fire district.

31. Wood decks less than 600 square feet are exempt from this requirement when constructed of 2-inch nominal wood, pressure treated for exterior use.

32. Although the cumulative square footage of the now two-story, wooden deck structure exceeded 600 square feet, Defendant Cordell, upon information and belief, approved the construction using an "alternative means and methods approach" of approval as allowed by Section 105, Chapter 1 of the 2018 North Carolina State Building Code.

33. Construction of the second level addition was inspected by Defendant Cordell and a Certificate of Compliance was issued in May, 2021.

34. On or about May 11, 2021, Defendant Russell certified to the North Carolina Alcoholic Beverage Control Commission that the business and building were in compliance with all building and fire codes.

35. In early 2022, Plaintiffs applied for and were issued a fourth building permit (Permit 6558) for the construction of a roof covering the upper-level deck.

36. Engineered drawings were submitted to and approved by Defendant Russell.

37. Construction of the roof was inspected by Defendant Russell and a Certificate of Compliance was issued.

38. On September 27, 2024, Hurricane Helene struck causing devastation across North Carolina.

39. Plaintiffs' building and business suffered damage to the second floor, including blown out windows, damaged electrical wiring, and falling ceiling tiles.

40. Plaintiffs performed emergency repairs without first obtaining electrical permits, as did thousands of other residents and business owners across Western North Carolina.

41. Defendant Burton issued a Notice of Violation to Plaintiff 131 Broadway on August 13, 2025, (the "NOV").

42. The NOV alleges that the Defendant Town had no design or engineered drawings, Appendix B, or life safety plan on file related to Permit 3621, but that a certificate of occupancy was nonetheless issued by Defendant Cordell on July 23, 2018.

43. The NOV alleges that the Defendant Town had no inspection records, design drawings, Appendix B, or site drawings on file for Permit 5925, and that there was no record of final inspection or certificate of compliance issued for Permit 5925, and that the permit expired.

44. The NOV alleges the Defendant Town had no site plan or Appendix B on file for Permit 6177.

45. The NOV alleges that the Defendant Town had no inspection records, engineered drawings, Appendix B, or life safety drawings on file for Permit 6558, and that the permit expired

without a Certificate of Occupancy or Compliance being issued and that the structure was therefore being occupied illegally.

46. The NOV asserts that the list of violations provided "should not be considered exhaustive."

47. Defendants then restricted occupancy of Plaintiff's business to 25 people, by prohibiting use of the upper deck.

48. Plaintiffs are informed and believe that prior to 2025, there was no publicly available copy of the Town of Black Mountain's primary fire district map.

49. Plaintiffs are informed and believe that upon assuming the duties of her office as Planning Director, Defendant Kennedy found the administrative records of the Planning and Zoning Office of the Town of Black Mountain to be in such a state of disarray that relevant permits, drawings, site plans, or records of approvals could not be located.

50. Plaintiffs are informed and believe that upon assuming the duties of his office, Defendant Burton found the records of the office of the Building Inspector to be in such a state of disarray that he was unable to locate engineered drawings, site plans, inspection reports, certificates of occupancy, or certificates of compliance for Plaintiffs' property.

51. Defendants restricted Plaintiffs' use of the upper deck despite previously issuing permits, conducting inspections, issuing certificates, and certifying code compliance to state agencies.

### COUNT ONE
### Substantive and Procedural Due Process Violations

52. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

53. Plaintiffs properly obtained and submitted all required engineered drawings, site plans, life safety plans, and other materials required for each of the permits issued with respect to the property located at 131 Broadway.

54. Plaintiffs properly completed construction according to the submitted and approved plans for each permit.

55. Defendants conducted final inspections and issued certificates of occupancy or certificates of compliance to close out each permit.

56. Defendants certified to other state agencies on multiple occasions that the property was in compliance with all building code, fire code, and zoning regulations.

57. After years of safe operation, Defendants took a directly contrary position in August of 2025, asserting the existence of deficiencies with respect to each and every permit obtained by Plaintiffs.

58. Plaintiffs possessed vested property rights arising from duly issued permits, completed inspections, certificates of occupancy and certificates of completion.

59. Despite assertions in the NOV that the Defendant Town was missing numerous records from Plaintiffs' permit files, Defendant Town was in possession of all such records.

60. Despite assertions that several of the permits had expired due to the lack of final inspection or issuance of certificates of compliance or occupancy, each permit was properly closed out and certificates of occupancy or compliance had been issued for each permit.

61. The NOV asserts that the list of violations is non-exhaustive, thereby requiring that Plaintiffs undertake hundreds of thousands of dollars of repairs or corrective action before learning whether the business could resume operations.

62. As a result, Plaintiff was deprived of fair notice and a meaningful opportunity to conform its conduct to Defendants' requirements.

63. The Defendants acted in bad faith or so capriciously and arbitrarily that their action was without adequate determining principle or was unreasoned.

64. As a direct result of Defendants' wrongful actions, Plaintiffs have incurred and continue to incur substantial expenditures in defending their rights including, but not limited to, engineering, consultant and attorney's fees.

65. In exercising its authority, the Defendant Town and its employees have acted in an arbitrary and capricious manner and have abused their discretion

66. As a direct result of Defendants' wrongful actions, Plaintiffs have suffered substantial damages, including, but not limited to, (i) out-of-pocket expenses; (ii) loss of profits; (iii) lost business opportunities; and (iv) serious reputational harm.

67. Plaintiffs are therefore entitled to recover from the Defendants damages as more fully developed at trial in these proceedings.

68. By the Defendants' actions referenced above, the Defendants have failed to clearly place Plaintiffs on notice as to what standards are reasonably applicable to a business conducting operations in the Town's "fire district."

69. The NOV is so fraught with uncertainty, vagueness, or indefiniteness of its limitations as to be unenforceable as a matter of procedural due process under our Federal and State Constitutions. Said failure to provide a uniform rule of action leaves the Plaintiff subject to the unguided or unbridled discretion of the Defendants in a manner that is arbitrary, oppressive, and attended with manifest abuse of authority.

70. Plaintiff has exhausted all administrative remedies and/or those remedies have been rendered futile by the ongoing actions of the Defendants.

71. As a result of the above alleged constitutional violations, Plaintiff is entitled to have and recover from the Defendants damages with interest as determined by a jury at trial.

## COUNT TWO
### Violations of Art. I, §1 and 35 of the North Carolina Constitution

72. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

73. Upon information and belief, no adequate state remedy exists.

74. By the actions of the Defendants as alleged above, Plaintiffs and their respective officers, members, and economic interest holders have been deprived of the fruits of their labor pursuant to Article I, §1 and §35 of the North Carolina Constitution, entitling Plaintiffs to recover from Defendants damages with interest, in excess of $75,000 as determined by a jury at trial.

## COUNT THREE
### Violations of Art. I, §19 of the North Carolina Constitution
*Against all Defendants*

75. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

76. Defendants are tasked with impartially applying and administering the Town of Black Mountain's zoning and land use ordinances, including application and enforcement of the North Carolina State Building Code.

77. Upon information and belief, Defendants reviewed site plans, engineered drawings, and permit applications for other similarly situated property owners within its jurisdiction in a manner that complied with state law and its own ordinances.

78. Upon information and belief, Plaintiffs are alone in facing the level and manner of enforcement undertaken by Defendants.

79. Plaintiffs have been treated differently from others similarly situated as the result of intentional or purposeful discrimination and there is no rational basis for the difference in treatment.

80. Defendants applied an arbitrary and capricious standard in place of the clearly defined standards of the Town of Black Mountain's ordinances and Chapter 160D of the North Carolina General Statutes.

81. Upon information and belief, the actions of Town officials were prompted by improper motives and purposes.

82. Defendants, by their actions alleged herein, have violated rights granted to Plaintiff pursuant to Art. I § 19 of the North Carolina Constitution by:

    a. Administering their authority against Plaintiff in a discriminatory fashion and with an unequal hand;

    b. Applying arbitrary and capricious standards against Plaintiff;

    c. Interfering with Plaintiff's property interests without providing a Constitutionally sufficient procedure allowing Plaintiff to be heard at a meaningful time and in a meaningful manner; and

    d. Failing to follow applicable rules and procedures.

83. As a result of the actions as alleged herein, Plaintiff has been deprived of due process and the equal protection of the laws in violation of Art. I, § 19 of the North Carolina Constitution, entitling Plaintiff to have and recover of the Defendants damages, with interest, in excess of $75,000, to be determined by a jury at trial.

84. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

85. Plaintiff had a distinct, reasonable, investment-backed expectation in the development of the property at 131 Broadway based upon the issuance of various permits and repeated certifications that the building and its operation were in compliance with all relevant state and local building and zoning regulations.

86. The Defendant Town, acting through its employees and officials, issued permits, induced construction of the deck, and then arbitrarily and capriciously rescinded that permission, denying Plaintiffs use of the deck.

87. As the result of Defendants actions to prohibit the use of the upper-level deck, allowed occupancy of the Property has been reduced to a fraction of the previously allowed occupancy.

88. The closure of the upper-level deck has substantially interfered with Plaintiffs' use and enjoyment of its property.

89. The market value of Plaintiff 131 Broadway's property has been substantially diminished as the result of Defendants' regulatory actions.

90. As a result of the Defendants' actions, Plaintiffs' property interests were taken or deprived, entitling Plaintiff to just compensation for what was lost under the 5th and 14th Amendments to the United States Constitution and Article I, Sec. 19 of the North Carolina Constitution through regulatory interference.

**COUNT FIVE**
**Negligence and Gross Negligence**
*Against Defendant Josh Harrold in his Individual and Official Capacities*

91. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

92. Defendant Harrold served as Town Manager for the Town of Black Mountain during periods relevant to this Complaint.

93. In his official capacity, Defendant Harrold had final approval and authority over all actions taken by the Zoning Administrator, Planning Director, Building Inspector and Assistant Town Manager.

94. Prior to serving as Town Manager, Defendant Harrold served as Planning Director for the Town of Black Mountain.

95. Upon information and belief, Defendant Harrold is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code.

96. Defendant Harrold had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code, maintenance of Town records, and in his oversight of employees under his supervision.

97. Defendant Harrold breached those duties.

98. Plaintiff was damaged as the direct and proximate result of Defendant Harrold's breach of his professional duties.

99. Defendant Harrold's actions constitute willful and/or wanton conduct.

100. Defendant Harrold's actions amount to an intentional failure to carry out duties imposed by law.

101. Defendant Harrold's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

102. Defendant Harrold's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiffs.

## **COUNT SIX**
## **Negligence and Gross Negligence**
*Against Defendant Jessica Trotman in her Individual and Official Capacities*

103. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

104. Defendant Trotman served as Assistant Town Manager for the Town of Black Mountain during periods relevant to this Complaint.

105. In her official capacity, Defendant Trotman had supervisory authority over actions taken by the Zoning Administrator, Planning Director, and Building Inspector.

106. Prior to serving as Assistant Town Manager, Defendant Trotman served as Planning Director for the Town of Black Mountain.

107. Upon information and belief, Defendant Trotman is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code.

108. Defendant Trotman had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code, maintenance of Town records, and in her oversight of employees under her supervision.

109. Defendant Trotman breached those duties.

110. Plaintiff was damaged as the direct and proximate result of Defendant Trotman's breach of her professional duties.

111. Defendant Trotman's actions constitute willful and/or wanton conduct.

112. Defendant Trotman's actions amount to an intentional failure to carry out duties imposed by law.

113. Defendant Trotman's actions were done with the intent to be prejudicial and/or injurious to Plaintiffs and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiffs.

114. Defendant Trotman's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiffs.

## COUNT SEVEN
### Negligence and Gross Negligence
*Against Defendant Michelle Kennedy in her Individual and Official Capacities*

115. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

116. Defendant Kennedy served as Planning Director for the Town of Black Mountain during periods relevant to this Complaint.

117. In her official capacity, Defendant Kennedy was responsible for administering and enforcing the Land Use Code for the Town of Black Mountain in a manner consistent with state and federal law.

118. Upon information and belief, Defendant Kennedy is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code and with relevant provisions of state and federal law.

119. Defendant Kennedy had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code.

120. Defendant Kennedy breached those duties.

121. Plaintiffs were damaged as the direct and proximate result of Defendant Kennedy's breach of her professional duties.

122. Defendant Kennedy's actions constitute willful and/or wanton conduct.

123. Defendant Kennedy's actions amount to an intentional failure to carry out duties imposed by law.

124. Defendant Kennedy's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

125. Defendant Kennedy's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

**COUNT EIGHT**
**Negligence and Gross Negligence**
*Against Defendant Charles Richard Burton in his Individual and Official Capacities*

126. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

127. Defendant Burton served as Building Inspector for the Town of Black Mountain during periods relevant to this Complaint.

128. In his official capacity, Defendant Burton was responsible for impartially applying the North Carolina Building Code on behalf of the Town of Black Mountain in a manner consistent with state and federal law.

129. Upon information and belief, Defendant Burton created multiple fictitious social media profiles which he used to anonymously comment on social media posts related to Plaintiffs' dispute with the Town of Black Mountain.

130. Defendant Burton had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code.

131. Defendant Burton breached those duties.

132. Plaintiffs were damaged as the direct and proximate result of Defendant Burton's breach of his professional duties.

133. Defendant Burton's actions constitute willful and/or wanton conduct.

134. Defendant Burton's actions amount to an intentional failure to carry out duties imposed by law.

135. Defendant Burton's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

136. Defendant Burton's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

## COUNT NINE
### Negligent Hiring, Training, and Supervision
*Against Defendant Town of Black Mountain*

137. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

138. The Town of Black Mountain owed Plaintiffs a duty of reasonable care to supervise the work of its planning and zoning officials and to ensure that the actions taken by those employees were in compliance with federal and state law.

139. The Town of Black Mountain failed to adequately supervise the work of its employees.

140. Failure to adequately supervise its employees was a proximate cause of Plaintiff's damages, which exceed $75,000.00.

## COUNT TEN
### 42 U.S.C.S. § 1983

141. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

142. The actions complained of herein were taken pursuant to official policies, customs, or practices of the Town of Black Mountain, or were taken by officials with final policymaking authority, including but not limited to the Town Manager, Assistant Manager, Planning Director, Building Inspector, Fire Inspector, and Town Council.

143. Based on Defendants' actions as alleged above, Plaintiffs have been deprived of its rights, privileges, or immunities secured by the Constitution and law, entitling Plaintiffs to relief under 42 U.S.C.S. § 1983 (hereinafter "1983 Claim").

144. Based on the 1983 Claim, Plaintiffs are entitled to recover damages with interest, in excess of $75,000.00 to be determined by a jury at trial.

145. Moreover, Plaintiffs are entitled to have and recover attorney's fees pursuant to the 1983 Claim.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

146. Plaintiffs incorporate by reference all preceding allegations of this Complaint as if fully set forth herein.

147. For approximately four years prior to the issuance of the NOV, Plaintiffs openly, continuously, and lawfully used and occupied the upper-level deck located at 131 Broadway Street.

148. The upper-level deck was constructed pursuant to permits issued by Defendants, inspected by Defendants' agents and employees, and approved for use through the issuance of certificates of completion, certificates of occupancy, and related governmental approvals.

149. During that period, Defendants repeatedly represented to Plaintiffs and other governmental agencies that the Property complied with applicable building, fire, zoning, and occupancy requirements.

150. The NOV was based upon materially inaccurate factual assertions, including assertions that permits had expired, that required plans and drawings had not been submitted, that inspections had not occurred, and that certificates of occupancy or completion had not been issued.

151. Defendants' actions prohibiting occupancy of the upper-level deck dramatically altered the long-standing status quo and deprived Plaintiffs of the beneficial use of a substantial portion of their business premises.

152. Defendants' actions have substantially reduced the lawful occupancy of Plaintiffs' business and have caused continuing economic harm, loss of goodwill, loss of customers, and damage to Plaintiffs' reputation within the community.

153. The continuing loss of customers, goodwill, business opportunities, and market position constitutes irreparable harm for which there is no adequate remedy at law.

154. Plaintiffs are likely to succeed on the merits of their claims because the evidence will show that the deck was permitted, inspected, approved, and occupied for years before Defendants abruptly reversed course based upon erroneous factual assumptions and missing municipal records.

155. Plaintiffs are further likely to establish that Defendants' actions were arbitrary and capricious, violated Plaintiffs' constitutional rights, and unlawfully interfered with vested property rights and investment-backed expectations.

156. The balance of equities weighs overwhelmingly in favor of Plaintiffs. Plaintiffs face ongoing and substantial financial injury from continued closure of the upper-level deck, while Defendants will suffer little or no prejudice from restoration of the conditions that existed continuously for years before issuance of the Notice of Violation.

157. Restoration of Plaintiffs' use and occupancy of the upper-level deck pending final adjudication of this matter will merely preserve the last actual, peaceable, and non-contested status existing before Defendants' challenged conduct.

158. The public interest favors the issuance of injunctive relief because governmental enforcement actions should be based upon accurate facts, consistent application of governing regulations, and respect for vested rights created through duly issued permits and approvals.

159. Unless enjoined by this Court, Defendants will continue to prohibit Plaintiffs from utilizing the upper-level deck, causing ongoing and irreparable harm during the pendency of this litigation.

## PRAYER FOR RELIEF

Plaintiff prays Judgment of the Court as follows:

1. Issue a Temporary Restraining Order restoring Plaintiffs' use and occupancy of the upper-level deck pending hearing on a preliminary injunction;

2. Following hearing, enter a Preliminary Injunction prohibiting Defendants, their officers, employees, agents, and persons acting in concert with them from enforcing the August 13, 2025 Notice of Violation to the extent it restricts or prohibits Plaintiffs' use and occupancy of the upper-level deck;

3. Order that Plaintiffs be permitted to resume operation of the upper-level deck under the same occupancy and operational conditions that existed immediately prior to issuance of the Notice of Violation;

4. Waive or substantially reduce any bond requirement pursuant to Rule 65(c) because Defendants will suffer no measurable monetary damages from preservation of the pre-existing status quo; and

5. An award of damages from the Defendants, jointly and severally, in excess of $75,000.00 as determined by a jury trial;

6. For a trial by jury;

7. For attorney's fees as allowed by law, including, but not limited to, G.S. 6-21.7 (Session Law 2019-111) and 42 U.S.C.A. § 1988;

8. For an award of costs as allowed by law;

9. For an award of interest as allowed by law;

10. For any further relief that the Court deems just and proper.

This ___ day of _____ 2026.          Respectfully submitted,

ALDERSON LAW                              s/ Ryan P. Alderson
12 Whitsett Street                        Ryan P. Alderson, Esq.
Greenville, SC  29601                     (Federal Bar No. 12693)
864-622-5757                              *Attorney for Plaintiff*
rpa@aldersonlawsc.com